GEORGE H. WALDO v. ARTHUR RICHMOND, ELLEN W. RICHMOND, JOHN P. ANDERSON AND WILLIAM H. MATTISON.

*Priority of Mortgage.*

Where one mortgage was substituted for another and by a corrupt arrangement with the mortgager, a third person, knowing the facts, procured and took advantage of an interval between the discharge of the original mortgage and the recording of the substitute, to record a mortgage which he obtained meanwhile for himself, and did this with the fraudulent purpose of securing priority, his mortgage was postponed to the other.

Appeal from Ionia. Submitted Jan. 24. Decided Jan. 31.

FORECLOSURE. Complainant appeals.

*F. D. M. Davis* and *Wm. O. Webster* for complainant. One is not subrogated as of course to the rights of an earlier mortgagee unless he stands in the relation of a surety to him or is compelled to pay the mortgage to protect his own rights, *Sanford v. McLean*, 3 Paige, 122; *Banta v. Garmo*, 1 Sandf. Ch., 383; *Woollen v. Hillen*, 9 Gill (Md.), 185; *Neidig v. Whiteford*, 29 Md., 178; 1 Jones on Mortgages, § 605.

*Smith & Sessions* for defendant Mattison. When an instrument has been canceled by mistake and in igno-

rance of facts material to rights under it, equity may grant relief. 1 Story's Eq. Jur., 167; *Barnes v. Camack,* 1 Barb., 392; *Robinson v. Sampson,* 23 Me., 388; *Dudley v. Bergen,* 23 N. J. Eq., 397.

COOLEY, J. In October, 1875, Henry B. Anderson sold to the defendant Arthur Richmond a parcel of land in Ionia county, and took back a mortgage for $650, being part of the purchase price. This sum was represented by three promissory notes, and the mortgage was intended to secure their payment, but by mistake one of the notes was not described therein. Anderson did not discover the error until the following January, when he endeavored to sell the mortgage, and found this error an impediment. He then applied to Richmond to have the error corrected. Richmond was then having business relations with Waldo, the complainant in this suit, and Waldo heard the conversation which took place between Anderson and Richmond, or at least so much of it as was necessary to understand what was contemplated. The person to whom Anderson proposed to sell his mortgage was the defendant Mattison, but it was decided that, instead of correcting the old mortgage, Richmond and his wife should execute a new one running directly to Mattison. To this Richmond agreed. It seems that at this time Richmond was indebted to Waldo on some patent right trades, and on January 10, 1876, which must have been within a very short time of the talk between Anderson and Richmond resulting in the agreement for a new mortgage, Richmond gave a mortgage to Waldo for the indebtedness to him. There is reason for believing that none of this indebtedness was then due. Waldo retained the mortgage in his hands, and did not place it upon record until as hereinafter stated.

The new mortgage to be given by Richmond to Mattison was executed, and placed in the hands of an attorney at Saranac, to be exchanged for a discharge of the.

old one.   Anderson's counsel called at the attorney's office March 6, 1876, to effect the exchange, but were confronted with instructions from Richmond that the mortgage to Mattison was not to be delivered until the discharge of the mortgage to Anderson had been sent to Ionia and placed upon record, and proper evidence of that fact brought back.   As this would leave an interval between the discharge of one mortgage and the recording of the other, the instructions naturally excited suspicions, but these seem to have been quieted in some manner, and the discharge was sent to Ionia and recorded on that day.   Within a short time thereafter, and on the same day, Waldo's mortgage, of which Anderson and Mattison were ignorant, was placed upon record, and when the mortgage to Mattison was also recorded, it assumed the position on the record of a second mortgage.

The foregoing is a very meagre outline of the facts. Waldo now files his bill to foreclose his mortgage and to subordinate the lien of Mattison's mortgage to his own.

We are satisfied from the evidence that Waldo was cognizant of all the proceedings resulting in the giving of the Mattison mortgage, knew it was to be given as a substitute for the mortgage to Anderson and for the same debt, and that he connived with Richmond to put his own mortgage on record precisely at the time when the record would be likely to give no information to the parties concerned, but would give his lien precedence of a mortgage which in equity should be a prior lien to his own. The instructions respecting the delivery of the Mattison mortgage must have had this in view, and it is impossible to doubt that Waldo and Richmond planned and have endeavored to carry out a gross fraud.

The circuit judge held that under the circumstances Mattison was entitled to stand in the position previously occupied by Anderson as a prior encumbrancer to Waldo.

We think this is entirely correct. The case is fully covered by *French v. Stone*, 38 Mich.

The decree must be affirmed with costs.

The other Justices concurred.